IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICK K. ANTOLIN,<br>#A0247127 | ) )<br>) | CIV. NO. 08-00104 SOM-BMK |
| Plaintiff, | )<br>)<br>) | ORDER GRANTING MOTION TO<br>DISMISS FOR FAILURE TO EXHAUST |
| vs. | )<br>) | ADMINISTRATIVE REMEDIES |
| HALAWA CORRECTIONAL<br>FACILITY, DEPARTMENT OF<br>PUBLIC SAFETY, STATE OF<br>HAWAII, FRANCIS SEQUEIRA, | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |
| _____ | ) | |

## ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiff Patrick K. Antolin, a prisoner incarcerated at the Halawa Correctional Facility ("HCF") in Hawaii, alleges that toxic diesel fumes entered his prison cell in the HCF Special Needs Facility, Module A, on several occasions when the prison tested its emergency generator. Defendants move to dismiss this action, arguing that Antolin failed to fully exhaust his prison administrative remedies regarding these claims before bringing this action in this court. Defendants also argue that Antolin's claims for injunctive relief should be dismissed as moot, as he has been transferred to a different section of HCF. Antolin filed an Opposition to the Motion on March 20, 2009, and Defendants filed their Reply on March 27, 2009.

The Court GRANTS Defendants' Motion to Dismiss based on Antolin's failure to exhaust his prison administrative remedies

before bringing this action.  This dismissal is pursuant to 42 U.S.C. § 1997e(a) and without prejudice.[1]

## I. BACKGROUND

The court received and filed this prisoner civil rights action on February 29, 2008.  The original Complaint was dismissed pursuant to 28 U.S.C. § 1915 for failure to state a claim.  [Doc. #4]  Antolin was granted leave to amend the Complaint to cure its deficiencies.

Antolin filed an amended Complaint on April 4, 2008, and a Second Amended Complaint on January 12, 2009.  [Docs. #16 & #89] He claims that allegedly toxic diesel exhaust fumes entered his cell on February 4, 11, 20, and 25, and March 3, 2008.[2]  He states that he suffered eye irritation and severe headaches from these fumes and alleges that, despite their knowledge of the problem, Defendants took no steps to protect him from the fumes.  He seeks $10 million, and an injunction preventing HCF from continuing to operate the emergency generator.

---

[1]This matter is suitable for disposition without a hearing. *See* Local Rule LR7.2(d).

[2]In the Amended Complaint, Antolin states that these are the dates that toxic fumes allegedly entered his cell.  Compl. 5.  In his Opposition, however, Antolin states that the fumes first entered his cell on February 6, 2008. This discrepancy is not material to the issues presented by the Motion.

## II. __LEGAL STANDARD__

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is a mandatory condition to commencing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (per curiam)(exhaustion during the pendency of the litigation will not save an action from dismissal).

Exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *McKinney*, 311 F.3d at 1199-00. All *available* remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *McKinney*, 311 F.3d at 1199 (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, such as monetary damages, exhaustion is still a prerequisite to bringing suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because proper exhaustion

3

is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *Ngo*, 548 U.S. at 90.

Defendants have the burden of raising and proving a prisoner's failure to exhaust. *Jones v. Bock*, 549 U.S. 199 (2007); *see Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt*, 315 F.3d at 1119. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact.[3] *Id.* at 1119-20. If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

A.   **Hawaii's Administrative Exhaustion Procedure**

Hawaii's prisoners may exhaust their complaints and grievances pursuant to the Department of Public Safety's ("DPS") Policies and Procedures Manual (1992) § 493.12.03(4.0). The rules establish a three-step process for exhausting an administrative appeal--the inmate must submit a grievance at each

_____

[3]If the court looks beyond the pleadings in deciding a motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14. Antolin was given such notice. [Doc. #107]

step and wait either for a response to that grievance or for the time to expire for receiving a response before moving on to the next step. *See* § 493.12.03.13–.15.

At Step 1, the inmate must submit a grievance to a Unit Manager within fourteen days of the date on which the complained-of action occurred. The Unit Manager has fifteen working days from the date of receipt of the grievance during which to investigate and respond. If the inmate receives an adverse determination at Step 1, the inmate has up to five days to file a Step 2 appeal from the Unit Manager's decision with the Branch Administrator. The Branch Administrator then has fifteen working days from the date of receipt of the Step 2 appeal to submit a written response to the inmate. If the inmate again receives an adverse determination, the inmate has up to five days to file a Step 3 appeal with the Institutions Division Administrator. The Institutions Division Administrator has twenty working days from the date of receipt of the inmate's Step 3 appeal within which to submit a written response to the inmate. The Institutions Division Administrator's decision is final.[4] *Id.*

---

[4]An inmate may also file an emergency or privileged grievance, with differing time limits and procedures, if a matter is "of a sensitive nature, and there exists a reasonable belief that punitive measures will be taken at the hands of facility staff or other inmate, or would otherwise be adversely affected if it is known at the facility that the complaint/grievance is being filed." *Id.* § 493.12.03.10.

If an inmate refuses to sign for receipt of a grievance response, the grievance is considered concluded per DPS Manual § 493.12.03.4.14j(4).  Further, if the facility fails to respond to an inmate's grievance within the time allowed, the inmate may proceed to the next step in the grievance process.  *Id.* § 493.12.03.4.14l.

### III.  <u>DISCUSSION</u>

Antolin filed Grievance No. 132757, on February 25, 2009, just four days before filing his original Complaint.  This grievance complains about fumes entering Antolin's cell on the same date.  Prison officials responded to this grievance on March 12, 2008, approximately two weeks after Antolin had already commenced this action.  Antolin did not appeal the disposition of this grievance.  Defendants therefore argue that Antolin filed suit before exhausting the grievance process and also failed to properly exhaust his claims through final appeal.

Defendants also argue that Antolin's claims for injunctive relief are moot because he has been transferred from the Special Needs Facility and there is no "reasonable expectation" that Antolin will be "transferred back to the Halawa Special Needs Facility, or that he will be subjected to allegedly toxic gases while at the prison due to the emergency generator."  Defs.' Mot. at 5.

**A.   Antolin's Claims Were Unexhausted When He Brought Suit.**

Antolin signed his original Complaint on February 20, 2008.  The Complaint is postmarked February 27, 2008, and it was received and filed at court on February 29, 2008.  It is unclear whether Antolin tendered the original Complaint to prison authorities for mailing on February 20, 2008, the date he signed it, or at some later date before February 27, 2008, the date it was mailed.  Giving Antolin the benefit of every doubt, the court assumes that he gave the Complaint to prison authorities on February 27, 2008, and that prison authorities mailed it to the court that same day.[5]  Antolin therefore brought this action, within the meaning of § 1997e(a), on or before February 27, 2008.  *See Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006) (finding that prisoner action is "brought" under § 1997e(a) when the prisoner submits the complaint to the court); *see also Ford v. Johnson*, 362 F.3d 395, 398-99 (7th Cir. 2004).

It is undisputed that, five days after signing his original Complaint, and two days before it was mailed, Antolin signed and submitted his only grievance concerning the allegedly

---

[5]The court recognizes that normally, when giving a prisoner the benefit of the doubt when the filing date is at issue, the date that the prisoner signed a complaint will be accepted as the filing date.  This allows the earliest possible date for statute of limitation purposes.  Here, however, the earliest date works to Antolin's detriment, as he must show that he exhausted prison remedies *before* he commenced suit, and he clearly signed his Complaint *four days before* he submitted the relevant grievance, No. 132757.

toxic fumes entering his cell.  Defs.' Ex. A, Grievance No. 132757, dated February 25, 2008.  Two weeks later, on March 12, 2008, Antolin received a response from prison authorities.  This timeline makes it clear that Antolin failed to wait for prison authorities to respond to or act upon his grievance before he commenced this litigation.  Having not waited for a response, or for the time to pass for a response, Antolin clearly brought this action before he had completed the grievance process, violating § 1997e(a)'s requirement that prisoners fully exhaust their grievances prior to commencing an action in the federal court.

In an apparent attempt to support his Opposition, Antolin submitted other prisoners' grievances concerning fumes entering their cells, including the prison's responses.  *See* Opp'n, Exs. A2, A3, A4 & A5.  These exhibits show that prison officials informed these other inmates that measures were being taken to mitigate fumes emitting from the emergency generator into their cells on February 14, 2008.  Antolin apparently argues that, because the prison informed other inmates that steps were being taken to ameliorate the problem, exhaustion of his claims was, or should be, excused.  *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (stating that "once a prisoner has exhausted 'available' remedies, and no further relief is available (that is, if his grievance is upheld at a first or second level, or he is told that his grievance is 'moot' and the grievance process is

therefore concluded) then there are no further 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

The court rejects this argument.  Prison officials' responses to other inmates' grievances, concerning fumes entering other inmates cells, have no bearing on Antolin's claims that he too was allegedly exposed to toxic fumes in his own cell.  These other grievances do not mention Antolin, and were not submitted on behalf of a group of inmates.  It is not even clear that Antolin was aware of the prison's responses to other inmates' grievances when he instituted this action.  In any event, Antolin admits that he filed his own grievance on February 25, 2008, and does not dispute that he did not receive a response to that grievance until after he had commenced this action.  Antolin's action must therefore be dismissed without prejudice for his failure to exhaust prison administrative remedies before bringing suit.[6]

---

[6]The court makes no determination as to whether Antolin exhausted the grievance process *after* commencing suit.  The prison's response to his grievance stated, "Other inmates have already filed litigation on this issue and the courts will now make the final determination and disposition. *No grievances will be processed on this matter . . . .*" This wording strongly suggests there were no "available" remedies remaining to Antolin after March 12, 2008. Defs.' Ex. A (emphasis added); *see Brown*, 422 F.3d at 935.

As noted above, the obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. *Brown*, 422 F.3d at 934-35.  Thus, a prisoner need not exhaust further levels of

**B.    Mootness of Plaintiff's Claims for Injunctive Relief**

A case or controversy must exist throughout all stages of litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)) (holding that a former prisoner's release from prison rendered his habeas petition moot because there was no longer a case or controversy as required by Article III, § 2 of the Constitution). If at any time during the course of litigation a plaintiff ceases to suffer, or be threatened with, "an actual injury [that is] traceable to the defendant," and that is "likely to be redressed by a favorable judicial decision," the matter is moot. *Spencer*, 523 U.S. at 7; *Wilson v. Terhune*, 319 F.3d 477, 479 (9th Cir. 2003) (the court lacks jurisdiction to hear moot cases under Article III); *see also Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (holding that a prisoner's civil rights action seeking injunctive relief that was brought under 42 U.S.C. § 1983 was moot because, after having been transferred from state to federal custody, he was no longer subject to the regulations that he sought relief from). When a prisoner seeking injunctive relief from a certain prison's regulations ceases to be housed in that

---

review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no further remedies are available. *Id.* at 935.

facility, the case or controversy then ceases to exist and the matter is moot. *Johnson*, 948 F.2d at 519.

An exception to the mootness doctrine applies to claims that are "capable of repetition, yet evading review." *Spencer*, 523 U.S. at 18.  To invoke this exception, a plaintiff must make two showings: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (citation omitted), *see also Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (prisoner's claim was moot upon transfer and did not fall under this two-prong exception to mootness doctrine); *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985) (a claim for injunctive relief by a prisoner no longer subjected to prison officials' allegedly unconstitutional activity was moot).  "A mere speculative possibility of repetition is not sufficient.  There must be a cognizable danger, a reasonable expectation, of recurrence for the repetition branch of the mootness exception to be satisfied." *Williams v. Alioto*, 549 F.2d 136, 143 (9th Cir. 1977).

The court recognizes that, if Antolin were transferred from HCF to another prison, his injunctive relief claims would be moot because the possibility of further exposure to the allegedly

toxic fumes would be speculative.  That is not the case here.
Antolin has not been transferred from HCF; he has simply been
transferred to a different section of the prison, apparently away
from the Special Needs Facility where the emergency generator is
housed.  The court has not found, and Defendants do not point to,
any case law that supports a finding that a prisoner's injunctive
relief claims are moot when the prisoner is transferred from one
section of a prison to a different section.  Prison officials
have nearly unfettered discretion to move a prisoner within the
prison, for administrative or safety concerns, or for no reason
at all.  It is therefore unlikely that transfer within a prison
necessarily moots a prisoner's injunctive relief claim.  *See*
*Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (prisoner
has no right to be housed in a less restrictive section of a
facility); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45
(1983)(prisoner has no right to be housed in a particular state).

        Moreover, a defendant seeking to dismiss a case on
grounds of mootness has "the 'heavy burden of persuad[ing]' the
court that the challenged conduct cannot reasonably be expected
to" continue or be repeated.  *Friends of the Earth, Inc. v.*
*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000),
*quoting United States v. Concentrated Phosphate Export Ass'n*, 393
U.S. 199, 203 (1968) (alteration in original).  A case becomes
moot only if "subsequent events [make] it absolutely clear that

12

the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted).  Defendants provide no guarantee that Antolin will not, or cannot be, rehoused in the Special Needs Facility Module A.[7]

Finally, although Defendants quote heavily from Judge Seabright's "Order Requiring Clarification," filed on May 8, 2008, in Civil No. 08-00073,[8] they fail to note that Judge Seabright explicitly declined to address whether the plaintiff's injunctive relief claims in that action were moot based on his transfer within HCF.  *See* Civ. No. 08-00073, Doc. #128, dated

---

[7]The record does not disclose why Antolin was originally housed in the Special Needs Facility, Module A, or why he has no reasonable expectation of being sent back. The court therefore does not address whether his own conduct is or will be the basis for any further transfer to the Special Needs Facility, Module A. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (no standing where further injury is premised on plaintiff's unlawful conduct); *Armstrong v. Davis*, 275 F.3d 849, 866 (9th Cir. 2001) (finding standing where plaintiffs did not need to engage in unlawful conduct to again become subject to the complained of unlawful practices).

[8]Civil No. 08-00073 was premised on the same claims presented here: that the HCF Special Needs Facility's emergency generator emitted toxic diesel fumes into cells located in Module A, on February 4, 11, 20, and 25, and March 3, 2008. That action was also dismissed for the plaintiff's failure to exhaust.  Prior to its dismissal, the court received evidence in opposition to the plaintiff's motion for preliminary injunction conclusively showing that the emergency generator was not emitting toxic fumes into Module A as of March 17, 2008.  *See* Civ. No. 08-00073, doc. #31 (Status Report, Preliminary Report on Air Quality Tests) and #44 (Status Report, Report to the Court on Air Quality Testing Performed at Halawa Special Needs Facility).  That evidence is not before the court in the present action.

June 13, 2008, Order Denying Plaintiff Schoenlein's Motion to Reopen Request for Injunction at 16, n.7.  Rather, Judge Seabright held that those claims were moot because "the air quality test results show that there are no toxic fumes emanating from the emergency generator into the cells at HCF High.  Thus, regardless of whether [plaintiff] is transferred back to HCF High, due to his own prison rules infractions, the prison's otherwise unfettered discretion, or because he is convicted and his custody status dictates placement in HCF High, he will not be subject to the alleged conditions that he complained of in his Requests for Injunction."  Civ. No. 08-00073, *Schoenlein v. Halawa Corr'l Facility*, (Doc. #128 at 16).

Given the record presently before the court in this action, it is premature to determine that Antolin's claims are moot simply because he has been moved from one area of HCF to another.  Whether those claims are moot because the emergency generator has been tested and shown to be properly operating has not been presented.  This action is dismissed for failure to exhaust, and the court declines to determine whether the claims for injunctive relief are moot.

## IV. CONCLUSION

Defendants' Motion is GRANTED and this action is DISMISSED without prejudice for failure to exhaust administrative

14

grievance procedures.  *See* 28 U.S.C. § 1997(e).  All pending

motions are DENIED as moot.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 31, 2009.



  /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Antolin v. Sequeira, et al.*, Civ. No. 08-00104 SOM-BMK; Order Granting Motion to Dismiss For Failure to Exhaust Administrative Remedies; pro se attys/Orders/dmp/2009/Antolin 08-104 (Mdsm Exh)